UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

IN RE:

SHEILA MARIE SPENCER,  Case No. 15-11204-13-cjf

    Debtor.

---

**MEMORANDUM DECISION**

I.    Statement of Procedural History

The Debtor, Sheila Marie Spencer ("Spencer"), filed this Chapter 13 bankruptcy case on April 3, 2015. PNC Bank, N.A. ("PNC") filed a Motion for Relief from Stay with In Rem Relief for Real Property Located at 1222 W. Jefferson Street, Marshfield, Wisconsin 54449, on April 16, along with a memorandum in support of the motion. PNC requested relief pursuant to section 105(a) and sections 362(d)(1), (2), and (4) of the Bankruptcy Code.

Spencer filed a Chapter 13 Plan and an offer of adequate protection on April 17, 2015. The adequate protection offer proposes to make monthly payments of $1,270.88 to "the Federal Home Loan Mortgage Corporation (Freddie Mac), in its own identity and capacity or as Trustee of an Unidentified Securitization Trust, or its successors or assigns (possibly the United States Treasury) to her attorney's trust account, pending sale of her homestead . . . ." *Offer of Adequate Protection*, Docket #24. Spencer's Amended Chapter 13 Plan states a sale of her homestead will be to her son, "contingent upon Buyer obtaining financing at an interest rate not to exceed 5% per annum." *Offer to Purchase*, Docket #29, Exhibit A.

The Court conducted an evidentiary hearing on May 11, 2015, and the parties submitted written argument.

II.  Background

The relevant facts have been recited numerous times by this Court and other courts[1] and will not be recited in detail here. A summary of the facts is sufficient to address the issues presented by the motion for relief from stay and the proffered adequate protection.

Spencer borrowed $209,160 to purchase a home in 2005. She signed a Note for that amount. The Note was secured by a mortgage on the home. No payments have been received and applied to the Note since late 2008. While the parties dispute the facts surrounding the failure of payments in 2008, Spencer concedes she has not tendered or made any payment in years. A foreclosure was commenced in April 2009 by FNMC, a division of National City Bank of Indiana n/k/a National City Bank. An amended foreclosure complaint was filed naming PNC as the plaintiff. It is undisputed that Federal Home Loan Mortgage Corporation ("Freddie Mac") owns a beneficial interest in the Note and Mortgage and PNC is the servicer.

---

[1] *See In re Spencer,* Ch. 7 Case No. 10-15242 (Bankr. W.D. Wis. Feb. 12, 2013), *aff'd sub nom. Spencer v. PNC Bank, N.A.*, Case No. 13–cv–369–bbc, 2013 WL 5563999 (W.D. Wis. Oct. 8, 2013) (denying motion to reopen Chapter 7 case); *PNC Bank, N.A. v. Spencer*, Case No. 13-cv-21-bbc (W.D. Wis. Mar. 25, 2013), *aff'd,* 763 F.3d 650 (7th Cir. 2014) (remanding foreclosure proceeding); *In re Spencer*, Ch. 13 Case No. 13-15076 (Bankr. W.D. Wis. Feb. 25, 2014), *aff'd sub nom. Spencer v. PNC Bank, N.A.*, Case No. 14-cv-422-wmc, 2015 WL 1520912 (W.D. Wis. April 2, 2015) (granting relief from stay and dismissing prior Chapter 13 case); *see also FNMC v. Spencer*, Wood County Circuit Court Case No. 2009CV000283 (filed Apr. 7, 2009), *appeal filed sub nom. PNC Bank, NA, v. Spencer*, Court of Appeals District 4 Case No. 2014AP002353 (notice of appeal filed Oct. 6, 2014) (foreclosure proceeding).

In 2010, Spencer filed a Chapter 7 bankruptcy case. PNC moved for and was granted relief from stay. Spencer received a discharge of her personal liability on the Note. The foreclosure action continued. PNC was formally substituted as the plaintiff. PNC filed a motion for summary judgment.

Spencer then began advancing the argument that is the theme of various theories in subsequent proceedings: PNC is not the real party in interest, Freddie Mac is the "true owner" of her Note, and PNC has no standing to enforce the Mortgage. She filed a motion for contempt in the bankruptcy court in 2012, claiming PNC and others continued *in personam* collection actions in the foreclosure proceeding in violation of the discharge order. That motion was denied. She then filed a motion to reopen the Chapter 7 case. The bankruptcy court denied the motion and two motions for reconsideration. Spencer appealed, and the District Court affirmed.

Having no success in the bankruptcy court, Spencer removed her foreclosure case to the District Court, which remanded and then denied two motions for reconsideration. Spencer appealed the District Court's order to the Seventh Circuit Court of Appeals. The Court of Appeals affirmed and ordered Spencer's attorney to show cause as to why she should not be sanctioned for pursuing a frivolous appeal.

Spencer then filed her first Chapter 13 bankruptcy case. PNC filed a motion for relief from stay and a motion to dismiss. An evidentiary hearing was held in February of 2014. The original Note was produced at the hearing. The Court found PNC had standing, that it was not adequately protected, and

3

granted PNC relief from stay. Spencer admitted the sole reason for the filing was to prevent the foreclosure from proceeding. The Court also dismissed the bankruptcy case for lack of good faith in filing the petition. Spencer appealed both orders.

Back in state court, the foreclosure proceedings continued. Spencer engaged in various procedural feints in those proceedings. The state court entered a judgment of foreclosure on August 20, 2014. Spencer appealed. No stay pending appeal was granted.

The property was sold at sheriff sale on April 1, 2015. The next day, April 2, the District Court affirmed the bankruptcy court's order granting relief from stay and dismissing Spencer's first Chapter 13 case. The day after, April 3, the Wisconsin Court of Appeals ordered Spencer's foreclosure appeal dismissed unless her now delinquent brief was filed within five days.

Spencer then filed this Chapter 13 case. She later filed an adversary proceeding. The adversary requests, yet again - and despite the existence of the foreclosure judgment - that this Court determine the identity of the entity entitled to payment of her Note and Mortgage, declare the Mortgage is null and void, and enjoin the state court from proceeding with the foreclosure or any eviction.

Spencer stipulated at the hearing that there is no equity in the property. She argues that this Court should determine and order adequate protection to be an amount equal to the original scheduled monthly mortgage payments. Finally, based on the fact she has been in the house since 2005 and it is the only home

her minor son has known, she argues that the Court should determine the property is necessary for an effective reorganization.

III. Jurisdiction

The Court has jurisdiction over this motion for relief from stay under 28 U.S.C. § 1334 by way of the reference from the District Court. 28 U.S.C. §§ 157(a) and (b)(1). Because it involves core proceedings under 28 U.S.C. §§ 157(b)(2)(A) and (G), the Court may enter final judgment. 28 U.S.C. § 157(b)(1).

IV. Analysis

The filing of a bankruptcy petition automatically stays a number of actions, including actions taken by the debtor's secured creditors to repossess or foreclose on their collateral. 11 U.S.C. § 362(a).

Parties in interest may request relief from the stay. Section 362(d)(1) provides the court shall grant relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." Section 362(d)(2) provides the court shall grant relief from stay as to property if (A) "the debtor does not have an equity in such property" and (B) "such property is not necessary to an effective reorganization."

The party requesting relief from stay has the burden of proof on the issue of the debtor's equity in property. 11 U.S.C. § 362(g)(1). The party opposing the relief - Spencer - has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2). Courts have interpreted section 362(g)(2) to mean the movant must first establish a prima facie case, which then must be rebutted by the debtor if

5

relief from stay is to be avoided. *In re Rexene Products Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

    A.    *Standing to Seek Relief from Stay*

Hearings on motions for relief from stay are summary proceedings at which the court decides limited issues. *Rinaldi v. HSBC Bank USA, N.A. (In re Rinaldi)*, 487 B.R. 516, 530 (Bankr. E.D. Wis. 2013). A decision to modify the stay is "only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere." *Id.* Thus, a creditor need merely demonstrate a "colorable claim" to property of the estate. *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990); *see also In re Rinaldi*, 487 B.R. at 530.

Here, PNC has demonstrated a colorable claim to property of the estate. PNC obtained a judgment of foreclosure on August 20, 2014. The Wood County Circuit Court found PNC is entitled to enforce a mortgage securing Spencer's performance of the terms of the Note executed by Spencer. *Judgment of Foreclosure*, Docket # 36, Movant's Exhibit 8 (finding "[t]hat the plaintiff is the holder of a Note dated July 29, 2005 and executed by defendant, ("the Note") and is entitled to enforce a Mortgage dated July 29, 2005 and executed by defendant on the Premises ("the Mortgage") which secured defendant's performance of the terms of the Note.")[2] PNC's witness, an Assistant Vice President and Manager of PNC's Default Litigation Department, testified there has been no assignment

---

[2] The judgment states PNC will not have a deficiency claim, and this is something PNC acknowledges as well. *Brief in Support of Motion for Relief from Stay*, Docket #11, p. 12 ("in light of her Chapter 7 discharge, the Debtor faces no deficiency judgment as a result of the sale").

since the judgment of foreclosure was entered. This determination is sufficient to establish PNC's standing to seek relief from stay.

Spencer's initial argument is that PNC cannot rely on the foreclosure judgment to demonstrate its standing because an appeal of the judgment is pending. She argues this means it is not a final judgment for the purpose of relief from stay. She is in error. The appeal is irrelevant to the motion. The issue is not whether any form of *res judicata* or collateral estoppel precludes Spencer from litigating who is entitled to payments or proceeds from a sale of the house. This Court need only determine whether PNC has demonstrated a colorable claim to property of the estate so that it can prosecute the claim elsewhere. Granting relief from stay does not preclude Spencer from proceeding in her state court appeal.

Spencer also asserts PNC is not the real party in interest to seek relief from stay because "it is the admitted servicing agent for Freddie Mac and does not have the authority of its principal to bring prosecute this Motion." Again, the Wood County Circuit Court has already determined PNC is entitled to enforce the Note and Mortgage. PNC is the holder of the original Note and the Mortgage. That there may be a beneficial interest holder does not obviate the findings of the state court. Further, as previously found by this Court, PNC is the holder of the original Note. It produced the original at the hearing in February of 2014 and it was admitted into evidence. This Court concluded, as did the state court, that PNC was the holder of the Note and entitled to enforce it under Section 403.301, Wis. Stats. The Court need not determine whether a beneficial owner exists and,

7

if so, who it is. Moreover, other courts have found that loan servicers are parties in interest under Rule 17 of the Federal Rules of Civil Procedure. *See, e.g., In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C. 2008) (collecting cases). Such a finding would be especially appropriate in this case, where PNC proceeded in the foreclosure action, obtained a foreclosure judgment, and also previously produced the original Note in this Court. PNC has demonstrated that it holds a colorable claim to the property and that is sufficient to confer standing.

  B. *Relief from Stay*

    1. "Cause," Including Lack of Adequate Protection

"Cause" as used in section 362(d) "has no clear definition and is determined on a case-by-case basis." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991), quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). However, it specifically includes "lack of adequate protection." Section 361 describes ways in which a party's interests may be adequately protected, including periodic cash payments. Secured creditors cannot repossess or foreclose on their collateral while the automatic stay is in effect. Thus, the purpose of adequate protection is to compensate secured creditors for the decrease in value of their interest in collateral during the period of a bankruptcy case before a plan providing for payment is confirmed. One bankruptcy court observes,

> The determination of whether a creditor's interest is adequately protected is not an exact science nor does it involve a precise arithmetic computation. Rather, it is pragmatic and synthetic, requiring a court to balance all relevant factors in a particular case, including the value of the collateral, whether the collateral is likely

> to depreciate over time, the debtor's prospects for a successful reorganization and the debtor's performance under the plan. Other considerations may include the balancing of hardships between the parties and whether the creditor's property interest is being unduly jeopardized.

*In re Rogers*, 239 B.R. 883, 887 (Bankr. E.D. Tex. 1999) (citation omitted).

PNC has made a prima facie case that it is not adequately protected. Spencer stipulated there is no equity in the property, so an equity cushion cannot adequately protect PNC's interest. She has made no payments on the Mortgage since October 2008. PNC's witness testified it has been required to pay for insurance and real estate taxes in order to protect its collateral and lien position. According to the foreclosure judgment, PNC's unpaid escrow advances for real estate taxes and hazard insurance totaled $33,654.64 as of September 13, 2013. It has not been reimbursed and has subsequently advanced further amounts. PNC has also expended funds in litigating Spencer's removal of the foreclosure proceeding to District Court and the resulting appeal. It continues to expend funds in this litigation.

Spencer devotes a portion of her argument to an assertion that PNC's witness did not have authority to refuse her offer of adequate protection. PNC's refusal of the offer is irrelevant to the matter before the Court. A relief from stay movant is free to accept or reject an offer to settle its motion, and the Court's role is not to second-guess why or how it made a decision not to accept an offer. If the offer is refused, the issue before this Court is simply whether PNC is adequately protected according to the terms of sections 361 and 362(d)(1).

Spencer has the burden of proving PNC is adequately protected. *See* 11 U.S.C. § 362(g)(2). She proposes to make monthly adequate protection payments of $1,270.88 to "the Federal Home Loan Mortgage Corporation (Freddie Mac), in its own identity and capacity or as Trustee of an Unidentified Securitization Trust, or its successors or assigns (possibly the United States Treasury) to her attorney's trust account, pending sale of her homestead . . . ." *Offer of Adequate Protection*, Docket #24. This is the amount of the principal and interest payment on the original mortgage amount. At the same time, she states she will seek to sell the property to her son and has commenced an adversary proceeding "to seek the Court's determination of the identity of the entity with the right to receive her payments . . . ." *Id.* Spencer introduced a declarations page showing an insurance policy in effect since August 9, 2014. The declarations page listed "Freddie Mac" as the mortgagee. Her brief indicates she has budgeted for real estate taxes, and the budget on her Schedule J does contain that as a line item. However, no evidence was presented by Spencer that she has paid real estate taxes. Neither has she taken action to add PNC as a mortgagee or additional named insured on the insurance policy.

Spencer's "offer" cannot seriously be viewed as something that meets her burden to show the interests of PNC are adequately protected against a decrease in value resulting from a continuation of the automatic stay. Rather, Spencer's offer continues to jeopardize the property interest. She proposes to make payments in the amount according to the original terms of the Note. Although she argues the property is not depreciating at a rate greater than her proposed

payments, she presented no evidence to support this contention. The judgment of foreclosure is in an amount significantly higher than the original face amount of the Note. The proposed payment does not account for any increase in the debt. It does not address the real estate taxes that continue to accrue or the fact that PNC was required to pay them to protect its lien position. Spencer merely asserts she has "budgeted" for them.

As for the issue of insurance on the property, PNC's witness testified that the insurance payee should be PNC. To his knowledge, PNC had not been provided with anything indicating insurance coverage on the property that names PNC as an additional insured for a policy that has been paid for by Spencer. Spencer offered no evidence or argument as to whether or how a policy listing Freddie Mac as a secondary insured would protect PNC.

It is also elementary that to adequately protect an entity through periodic cash payments, one must direct the payment appropriately. The terms of the offer do not contemplate payments to PNC. The written offer is a proposal to pay the Federal Home Loan Mortgage Corporation, or pay funds into Spencer's attorney's trust fund while litigation continues. Even if the Court took oblique comments made at the evidentiary hearing to constitute a proposal to pay PNC directly if the Court so ordered, Spencer has still not demonstrated the amount adequately protects PNC.

The final component of the adequate protection offer is the abbreviated offer to purchase from Spencer's son. While the amount is slightly greater than the amount bid at the sheriff sale, it is a contingent offer. It is subject to

11

financing at a rate of less than 5% amortized over an unspecified term. There is no closing date. No evidence regarding whether Spencer's son is an able buyer or that he has even applied for a loan was presented.

Spencer has failed to meet her burden of proving that PNC is adequately protected. Accordingly, PNC Bank is entitled to relief from stay for cause under section 362(d)(1).

    2.    <u>Lack of Equity in Property Not Necessary to an Effective Reorganization</u>

Parties in interest are also entitled to relief from stay as to property if "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization." 11 U.S.C. §§ 362(d)(2)(A) and (B). The moving creditor has the burden of proof on the issue of the debtor's equity in the property. 11 U.S.C. § 362(g)(1). Spencer has stipulated there is no equity in the property.

Thus, the burden shifts to Spencer to prove the property is necessary to an effective reorganization. To do so, Spencer must show not just that "if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.*" *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers)*, 484 U.S. 365, 376, 108 S. Ct. 626, 633, 98 L. Ed. 2d 740 (1988). She must show that there is "a reasonable possibility of a successful reorganization within a reasonable time," to which the property is necessary. *Id.*

Many debtors file Chapter 13 cases for the main purpose of curing delinquent mortgage or car payments so that they may retain a home or vehicle. Because this can be a legitimate use of Chapter 13, courts often conclude that a home or vehicle is typically necessary for a debtor's effective rehabilitation without significant analysis. *See, e.g., In re Stratton*, 248 B.R. 177, 182 (Bankr. D. Mont. 2000). However, this is not the typical case. Both Spencer's initial Chapter 13 Plan and amended Chapter 13 Plan turn on a proposal to sell the property to her son.

If Spencer does not intend to retain the property, it is difficult to see how it is necessary to her effective reorganization as a Chapter 13 debtor. There is no financial benefit to Spencer or the estate in selling the property herself rather than having it sold through the sheriff sale. Spencer does not have any equity in the property, so the sale will not generate exempt equity for her to use to purchase another home. There will not be any proceeds from a sale available to any creditor other than PNC. The proposed sale simply delays the ability of PNC to realize on the value of the collateral. Spencer's personal liability has been discharged, so there will be no deficiency judgment following the sheriff sale.

The prospect of a successful sale to Spencer's son actually closing is speculative at best. The "offer" from Spencer's son is contingent on his obtaining financing. There is no evidence as to the son's ability to obtain financing. There is no period specified for finalizing the offer or filing a motion requesting the Court approve the sale. There is no closing date. Thus, although the plan contemplates

a sale of the property, the plan as proposed does not appear to offer a reasonable possibility of success.

The proposed sale is an attempt to keep the house in Spencer's family. This is presumably so Spencer may also continue to live there. There was no testimony that the property was in any way uniquely suited to her needs or those of her family. Admittedly, the property may be the place she would prefer to live. It is certainly the location suggested as her residence in her proposed plan. It is not, however, the only possible residence for Spencer and her child. There was no testimony that no other housing options existed. In fact, Spencer testified that she looked at another property she might rent on the same street as the house at issue. She has not pursued that option or any other housing option because she simply refuses to move from this property.

Spencer testified about her emotional attachment to the house. An emotional attachment, however, does not make the house reasonably necessary to an effective reorganization. The Spencer family had the chance to keep the house by bidding at the sheriff sale. They did not do so. If there were defects in the sale process, Spencer is entitled to raise those at any hearing on confirmation of the sale. Like the offer of adequate protection, the plan as currently proposed and the corresponding offer to purchase appear to be no more than an effort at additional delay in an attempt to repeat the arguments that PNC is not entitled to enforce the Mortgage and, consequently, to continue to avoid making payments. PNC is also entitled to relief from stay under section

362(d)(2). Spencer has stipulated she does not have equity in the property, and she has not shown it is necessary to an effective reorganization.

    3.    <u>Applicability of Section 362(d)(3)</u>

PNC did not request relief from stay under section 362(d)(3). However, Spencer addresses this section, seemingly arguing it affords her a right to retain the property in exchange for payments. Although Spencer observes section 326(d)(3) applies only to a creditor whose claim is secured by single asset real estate, and observes there is no evidence PNC is secured by single asset real estate, she devotes part of her argument to attempting to show the offer of adequate protection more than meets its requirements. As noted, relief under the section has not been requested and this section does not apply here.[3] For those reasons, the Court will not address the requirements of that section.

    C.    *"In Rem" Relief from Stay*

PNC Bank has further requested the Court grant "*in rem*" relief from stay under section 362(d)(4). This infrequently-used provision of the Bankruptcy Code permits bankruptcy courts to enter an order excepting real property from

---

[3] Section 362(d)(3) provides that a creditor whose claim is secured by an interest in "single asset real estate" is entitled to relief from stay of acts against single asset real estate unless certain criteria are met. "Single asset real estate" is a term defined in section 101(51B) of the Bankruptcy Code and means:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

The only real property scheduled in the case is Spencer's homestead, so this is unequivocally not a single asset real estate case.

the automatic stay that would come into effect in a subsequent bankruptcy case filed within two years. *See* 11 U.S.C. § 362(b)(20).

> Section 362(d)(4) provides the court shall grant this relief if:
>
> with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> >
> > (B) multiple bankruptcy filings affecting such real property.

The section requires the establishment of three elements: (1) a scheme; (2) to delay, hinder, or defraud creditors; and (3) involving either the transfer of property without the creditor's consent or court approval or multiple filings affecting real property. The second requirement is now disjunctive and requires a finding that the scheme be to delay, *or* to hinder, *or* to defraud. *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870 n.5 (B.A.P. 9th Cir. 2012) (noting the Bankruptcy Technical Corrections Act of 2010 eliminated the conjunctive "and" and replaced it with the disjunctive "or").

"Scheme" is defined as "an intentional artful plot or plan . . . ." *In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010). Spencer's litigation history, coupled with the fact that she has not made payments since 2008, demonstrate a scheme to delay PNC. Other courts have held that a "Debtor's continued efforts to use the bankruptcy filings to collaterally attack [a] Foreclosure Judgment, notwithstanding repeated rulings that such a collateral attack is precluded by

16

res judicata and *Rooker–Feldman*" serve as some evidence of a scheme to delay, hinder, or defraud creditors. *In re Richmond*, 516 B.R. 229, 235 (Bankr. E.D.N.Y. 2014).

In opposing PNC's motion for relief from stay and motion to dismiss her prior Chapter 13 bankruptcy case, Spencer rehashed arguments challenging PNC's right to enforce the mortgage on her house. This Court had already rejected similar arguments when it refused to reopen Spencer's 2010 Chapter 7 case, by the District Court when it affirmed the refusal to reopen, by the District Court when it remanded the foreclosure proceeding, and by the Seventh Circuit Court of Appeals when it affirmed the remand order. All the while, she has been living in the home without making payments on the Mortgage, real estate taxes, or providing proof of insurance.

Having filed the petition in the present case two days after the property was sold at sheriff sale, Spencer is now back in bankruptcy court asking this Court to answer the same question of what entity has a right to enforce the Mortgage and/or asserting the Mortgage is void. Her proposal as to how she will proceed in the present case is a proposal to delay further: pursue an adversary proceeding based on the argument that PNC is not entitled to enforce the Mortgage, and not make any payments to PNC while the adversary proceeding is pending.

This scheme involved multiple bankruptcy filings. Spencer has filed three bankruptcy petitions since foreclosure proceedings were initiated. All three bankruptcy cases stayed the foreclosure action as to the real property.

Admittedly, Spencer's intent when she filed the first of the three may have simply been to receive a Chapter 7 discharge, although the motion for contempt and sanctions filed after the discharge appeared targeted at delaying the state court foreclosure proceeding. Even without counting that case, Spencer has filed two Chapter 13 cases to delay PNC. She filed the first Chapter 13 case the day before the summary judgment hearing was to take place in the foreclosure proceeding. The Court found that she lacked good faith in filing that case and dismissed it for that reason. Spencer waited to file the present case until her brief was due in the foreclosure appeal, which was also the day after the District Court affirmed dismissal of the prior case, and two days after the property was sold at sheriff sale. If Spencer was genuinely interested in pursuing an answer, she could have prosecuted that appeal. Instead, she sought to delay by filing this bankruptcy.

Spencer has engaged in a scheme to delay creditors involving multiple bankruptcy filings affecting real property. Thus, PNC is entitled to *in rem* relief from stay as to the real property located at 1222 W. Jefferson Street, Marshfield, Wisconsin 54449. If recorded in compliance with applicable state laws governing notices of interests or liens in real property as provided in section 362(d)(4), the order granting relief from stay shall be binding in any other case under this title purporting to affect such real property filed not later than two years after the date of the entry of such order by the Court.

V.      Conclusion

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure. PNC is entitled to relief from stay *in rem.*

A separate order consistent with this decision will be entered.

Dated: May 15, 2015

                BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge